ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

GRZEGORZ TUTKA and EDWARD POLTORAK,
on behalf of themselves and all others similarly situated,

                        Plaintiffs,

                -against-

OPTIMUM CONSTRUCTION, INC. and
EFSTRATIOS BENARDIS,

                        Defendants.

-------------------------------------------------------------------X

**Docket No:**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## RICO COMPLAINT

1. Plaintiffs Grzegorz Tutka ("Tutka") and Edward Poltorak ("Poltorak"), on behalf of themselves and all others similarly situated, by and through their attorneys, Robert Wisniewski P.C., as and for their complaint against Defendants Optimum Construction, Inc. (the "Corporate Defendant") and Efstratios Benardis (the "Individual Defendant") allege as follows:

## NATURE OF THE ACTION

2. Plaintiffs bring this action on behalf of themselves and all others similarly situated to recover unpaid prevailing wages and kickbacks, liquidated damages, and reasonable attorneys' fees and costs under Articles 6, 8, and 19 of the New York Labor Law and the various wage orders promulgated thereunder by the New York State Department of Labor

-1-

and codified at 12 N.Y.C.R.R. §§ 135-146 ("New York Labor Law"), as well as the common law of the State of New York.

3.    Plaintiffs also bring this action on behalf of themselves and all others similarly situated to recover actual damages, treble damages, and punitive damages for violations of the Organized Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations (18 U.S.C. § 1964) ("RICO").

4.    Plaintiffs and others similarly situated worked as laborers for Defendants' construction business on public works projects.  Defendants orchestrated a scheme by which they billed the relevant government instrumentalities for prevailing wages for their workers and issued paychecks to the workers for such wages, but required the workers to kick these wages back to keep their jobs.  Defendants then paid Plaintiffs and others similarly situated substantially lower cash wages.

## PARTIES, JURISDICTION AND VENUE

5.    Plaintiff Tutka, at all relevant times herein, was and is a resident of the State of New York, Kings County.

6.    Plaintiff Poltorak, at all relevant times herein, was and is a resident of the State of New York, Queens County.

7.    The Corporate Defendant, at all relevant times herein, was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 23-73 48th Street, Long Island City, New York, 11103.

8.    Upon information and belief, the Individual Defendant is a resident of the State of New York, Queens County.

-2-

9.      The Individual Defendant is an owner, shareholder, officer, director, and/or manager of the Corporate Defendant and as one of the ten largest shareholders as individually responsible for unpaid wages under the New York Business Corporation Law (**Exhibit 1**).

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under RICO.  This Court has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, because those claims are related to Plaintiffs' federal claims and form part of the same case or controversy.

11.     The Defendants engage in an enterprise whose activities affect interstate commerce in that the employees of said Defendants handle goods and materials that have moved in interstate commerce (including tools, lumber, and other items), and the park projects Defendants worked on affect interstate and international tourism commerce.  Defendants are thus subject to the jurisdiction of the RICO.

12.     This Court has personal jurisdiction over the Corporate Defendant in that it is incorporated in the State of New York and has its principal place of business therein.

13.     This Court has personal jurisdiction over the Individual Defendant in that he is a citizen and resident of the State of New York, and/or he maintains continuous contacts with New York and transacts a substantial amount of business therein.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b), in that one or more Defendants reside in this District, and significant events giving rise to Plaintiffs' claims occurred in this District.

## JURY DEMAND

15.    Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

16.    The Corporate Defendant is a general contracting company that performs construction work for various projects in the New York City area.

17.    On or about September 1, 2010, Defendants entered into an oral agreement with Tutka whereby Tutka would be paid $1,000 per week in exchange for working as a laborer for Defendants.  Tutka worked for Defendants from approximately September 1, 2010 until January 13, 2014.

18.    On or about December 27, 2012, Defendants entered into an oral agreement with Poltorak whereby Poltorak would be paid $700 per week in exchange for working as a laborer for Defendants.  Poltorak worked for Defendants from approximately December 27, 2012 until February 7, 2014.

19.    Both Tutka and Poltorak worked a regular 40-hour per week schedule for Defendants, from 7 AM until 3:30 PM with a half-hour lunch break five days per week.  Plaintiffs were always paid their wages in cash.

### *Facts Relating to Defendants' Public Works Projects*

20.    As part of their construction business, Defendants entered into contracts with the New York City Department of Parks and Recreation ("DPR") to perform publicly-financed projects for the city and state of New York.

21.    These contracts with the DPR, pursuant to which Defendants worked as general contractors, included without limitation the following:

a. New York City Department of Parks and Recreation - Contract # 201042396/Q022-106M for the "Reconstruction of Weeping Beach Playground"; and

b. New York City Department of Parks and Recreation - Contract # 201001424275/CYNG-209M for the "Reconstruction of Comfort Stations and Facilities at Various Parks Citywide."

22. Plaintiffs worked on a number of projects pursuant to Defendants' contracts with DPR, including without limitation the following:

a. Harris Field Park;

b. Randall Island Park;

c. A park located in Staten Island;

d. Highbridge Park;

e. Williamsburg Park;

f. Inwood Park;

g. Mayfair Park;

h. Corona Park;

i. South Pacific Playground;

j. Thomas Green Playground;

k. Forrest Park Tennis Court; and

l. Beach Channel Playground.

*Facts Relating to Defendants' Kickback Scheme*

23. Section 220 of the New York Labor Law provides that the wages to be paid to workers on

public work projects shall not be less than the "prevailing rate of wages."

24. The projects Defendants worked on pursuant to Defendants' contracts with DPR were subject to the prevailing wages requirement of the New York Labor Law.

25. Defendants submitted invoices to the relevant government instrumentalities that billed for their employees at these prevailing wage rates.  The wage expenses for Plaintiffs and others similarly situated were included on such invoices.

26. However, rather than pay Plaintiffs and others similarly situated the prevailing wages for which the city and state of New York remunerated them, Defendants would require their workers to turn the checks over to them, and then pay the workers their usual (and substantially smaller) wages in cash.

27. Typically, one of Defendants' managers (originally a Greek man named Spiro; later a Ukrainian man named Roman) would approach the workers either individually or in a group, present one or more checks face down so the worker could not see the amount, and require the worker to endorse it.  If the worker did not, he would not receive any pay, and would likely be fired on the spot.  Plaintiffs never saw any worker refuse to endorse the checks.  Spiro would always approach workers individually, while Roman would frequently approach an entire group of workers at the same time.

28. Sometimes the manager would have Plaintiffs sign one check, and sometimes the manager would have several checks for Plaintiffs to sign.  Sometimes Plaintiffs would be paid their cash wages immediately after signing the checks over; sometimes they would be paid at a different time.

29. After the workers signed the checks, the manager would take the checks away.  Upon

-6-

information and belief, the Individual Defendant cashed these checks intended for

Plaintiffs and others similarly situated, and kept the proceeds for himself.

30.     This illegal kickback scheme constituted a pattern of activity, in that the Individual

Defendant required Plaintiffs and others similarly situated to endorse all of their

prevailing-wage paychecks back to him.

*Facts Relating to Plaintiffs' Administrative Complaint*

31.     Defendants were obligated under Section 220(3)(a) of the New York Labor Law to ensure

their employees who worked on projects under the DPR contracts – including Plaintiffs

and others similarly situated – were paid prevailing wages.  Such wages were either

expressly included or incorporated by reference in the DPR contracts.

32.     However, pursuant to the scheme outlined above, Defendants failed to pay Plaintiffs and

others similarly situated the prevailing wages required by law.

33.     Accordingly, on or about April 17, 2013, Plaintiffs filed written complaints with the

Comptroller of the City of New York (the "Comptroller"), seeking payment for the

unpaid prevailing wages and supplements due to them under the New York Labor Law.

34.     Thereafter, the Comptroller filed a claim on behalf of Plaintiffs and other employees of

Defendants who had not been paid prevailing wages for work performed pursuant to the

DPR contracts (the "City Claim").  The City Claim sought unpaid prevailing wages on

such contracts for the two years prior to the April 17, 2013 date Plaintiffs filed their

complaints, as the Comptroller's authority to recover such unpaid wages was limited by

statute to the two years prior to the filing of a complaint.

35.     Thus the City Claim sought wages only for the time period of April 2011 to April 2013

(the "City Claim Period").

36. On April 17, 2014, the City Claim was settled pursuant to a Stipulation of Settlement and Order & Determination (the "City Settlement"). Pursuant to the City Settlement, Tutka was awarded $141,969.51 in unpaid wages and interest, and Poltorak was awarded $26,299.75.

37. Defendants have not appealed the City Settlement, and the time to do so has expired.

38. Both Plaintiffs worked for Defendants on projects subject to the DPR contracts outside of the City Claim Period. Tutka worked for Defendants both before and after the City Claim Period, and as such did not recover for his work from September 1, 2010 to April 17, 2011 and from April 17, 2013 to January 13, 2014 under the City Settlement. Poltorak similarly did not recover for his work from April 17, 2013 until February 7, 2014.

39. To protect their rights of recovery for these unpaid wages, Plaintiffs specifically conditioned their acceptance of the City Settlement on retaining the right to pursue Defendants for their remaining unpaid wages. On July 18, 2014, both Plaintiffs executed releases in the City Claim wherein they reserved their rights against Defendants "for any and all claims, debts, causes of action, suits dues, sums of money, accounts and reckonings not covered in the Comptroller's Order and Determination dated April 24, 2014. A copy of the July 18 release and executed stipulation is attached as **Exhibit 2**.

*Defendants' Failure to Pay Proper Wages was Willful*

40. Defendants as employers have certain statutory obligations towards employees, including paying employees the proper prevailing wages for work pursuant to contracts entered into

-8-

with government instrumentalities, and making, keeping, and preserving proper payroll records.

41.     Defendants were aware of their requirement to pay Plaintiffs and others similarly situated prevailing wages for their work under the DPR contracts, and to make, keep, and preserve proper payroll records. Nevertheless, Defendants failed to do so.

42.     As such, the various violations of the law which are alleged herein were committed intentionally and willfully by Defendants.

43.     Tellingly, even after Plaintiffs filed their complaint with the Comptroller, Defendants continued to maintain their illegal kickback scheme.

44.     Defendants further willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain proper and complete time sheets or payroll records.

***Facts Relating to the Defendants as Joint Employers***

45.     At all relevant times herein, the Corporate Defendant was and is controlled by the Individual Defendant.

46.     At all relevant times herein, the Individual Defendant conducted business as the Corporate Defendant.

47.     At all relevant times herein, the Individual Defendant acted for and on behalf of the Corporate Defendant, with the power and authority vested in him as an owner, officer, agent, and/or employee of the Corporate Defendant, and acted in the course and scope of his duty and function as an owner, officer, agent, and/or employee of the Corporate Defendant.

48.  At all relevant times herein, the Individual Defendant directly managed, handled, or were otherwise ultimately responsible for, the payroll and/or payroll calculations and issuing pay to Plaintiffs and others similarly situated.

49.  The Individual Defendant had control over the conditions of employment of Plaintiffs and others similarly situated, including their hiring and firing, their work schedules, the rates and methods of payment of their wages, and the maintenance of their employment records.

50.  At all relevant times herein, the Individual Defendant had operational control over the Corporate Defendant.

51.  As a matter of economic reality, all Defendants are joint employers of Plaintiffs and others similarly situated; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## CLASS ACTION ALLEGATIONS

52.  Plaintiffs bring this action on behalf of themselves and all other persons who were or are employed by Defendants as laborers or performing similar tasks and performed work, labor and services but did not receive the compensation required by the New York Labor Law and the common law of the State of New York.

53.  Upon information and belief, this class of persons consists of not less than forty (40) persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23 (a)(1).

54.  There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically whether the employment of

-10-

Plaintiffs and others similarly situated by Defendants is subject to the jurisdiction and prevailing wage requirements of the New York Labor Law and the common law of New York and whether Plaintiffs and others similarly situated suffered from Defendants' pattern of illegal behavior.  Only the amount of individual damages sustained by each class member will vary.

55.   The claims of  Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

56.   Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

57.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

58.   Plaintiffs bring all claims for relief herein on behalf of themselves and all persons similarly situated as a class action pursuant to Fed. R. Civ. P. 23, in respect to all claims that Plaintiffs and all persons similarly situated have against the Defendants as a result of Defendants' violations under RICO, the New York Labor Law, and the common law of the State of New York.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract against Defendants)

59.   Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

60.   Plaintiffs and others similarly situated entered into oral agreements with Defendants to

supply work as laborers in furtherance of Defendants' construction business in exchange

for wages.

61.     Plaintiffs and others similarly situated satisfactorily supplied labor and complied with the

terms of their employment agreements with Defendants, and were therefore entitled to

wages they rightfully earned while working for Defendants.

62.     Defendants failed or refused to pay Plaintiffs and others similarly situated the wages to

which they was entitled under their employment agreements.

63.     Defendants' failure or refusal to pay Plaintiffs and others similarly situated the wages to

which they were entitled under their employment agreements constituted breaches of

such agreements.

64.     By virtue of the foregoing breaches of contract by Defendants, Plaintiffs and all others

similarly situated have been damaged in an amount to be proven at trial, based upon an

accounting of the amount they should have been paid as contemplated by their

employment agreements, less amounts actually paid to them, together with an award of

interest, costs, disbursements, and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Quantum Meruit against all Defendants)

65.     Plaintiffs repeat and reallege each and every previous allegation as if fully set forth

herein.

66.     Plaintiffs and others similarly situated performed work and services at Defendants'

request and direction as laborers for Defendants' construction business.

67.     Defendants, by employing Plaintiffs and others similarly situated, voluntarily accepted

their services, and derived substantial benefit therefrom.

68.    Plaintiffs and others similarly situated had a reasonable expectation of payment for their

labor, but Defendants failed to remunerate them for all the hours they worked.

69.    Plaintiffs and all others similarly situated are entitled to payment for the unpaid hours

they worked for Defendants at a rate which constitutes the reasonable value of their

services, less amounts actually paid to them, together with an award of interest, costs,

disbursements, and attorneys' fees.

**THIRD CLAIM FOR RELIEF**
**(Third Party Beneficiary Claim for Prevailing Wages against all Defendants)**

70.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth

herein.

71.    Plaintiffs and others similarly situated were persons covered by, and/or the intended

third-party beneficiaries of, contracts entered into by Defendants and DPR to perform

work on public works, which were covered by the provisions of New York Labor Law.

72.    In accordance with the terms and conditions of Defendants' contracts with DPR, and the

relevant provisions of the New York Labor Law relating to prevailing wages and

supplements to be paid to employees of Defendants, Plaintiffs and others similarly

situated should have been paid the prevailing wage and prevailing wage supplements for

the work and labor they supplied in connection with and in furtherance of the work

contemplated by such contracts.

73.    Defendants knowingly and willfully failed or refused to pay Plaintiffs and others

similarly situated the prevailing wage and prevailing wage supplements for regular hours

of work in connection with the execution of the Defendants' contracts with the DPR.

74. Defendants' failure or refusal to pay Plaintiffs and others similarly situated the prevailing wage and prevailing wage supplements constitutes a material breach of Defendants' contracts with the DPR.

75. Defendants violated the provisions of New York Labor Law in that they failed to pay Plaintiffs and others similarly situated the prevailing wages required under the relevant laws.

76. Pursuant to Defendants contracts with the relevant government instrumentalities, and the relevant provisions of the New York Labor Law relating to "prevailing wages" to be paid to employees working on public works projects, Defendants were obligated to ensure that Defendants' employees were compensated no less than the prevailing wages and supplements required by those contracts and under the New York Labor Law for each hour worked.

77. By failing to ensure that Defendants' employees received the prevailing wages and supplements required under their contracts with the relevant government instrumentalities, and the relevant provisions of New York Labor Law relating to "prevailing wages" to be paid to employees working on public works projects, Defendants breached their contracts with the relevant government instrumentalities, by which contracts Plaintiffs and others similarly situated were covered and/or intended beneficiaries.

78. Plaintiffs and all others similarly situated seek a judgment for damages based upon an accounting of the amount Plaintiffs and all others similarly situated were paid and the

amount they should have been paid in prevailing wages, together with an award of interest, costs, disbursements, and attorney's fees as provided under the New York Labor Law.

## FOURTH CLAIM FOR RELIEF
### (Illegal Kickbacks under New York Labor Law Section 193-b against All Defendants)

79.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

80.    Defendants repeatedly requested, demanded and received parts of their employee's wages in an illegal kickback scheme in violation of Section 193-b of the New York Labor Law.

81.    Specifically, Defendants issued payroll checks at the required prevailing wage rates to Plaintiffs and others similarly situated, only to require them to endorse the checks back to Defendants.  Defendants would cash the endorsed checks and pay Plaintiffs and others similarly situated significantly lower cash wages instead.

82.    Complying with Defendants' kickback scheme was a condition of continued employment, and failure to sign the checks over to Defendants would have resulted in termination.

83.    Wherefore, Plaintiffs and all others similarly situated seek a judgment against Defendants for all wages which should have been paid, but were not paid, pursuant to the New York Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiffs and others similarly situated, along with an award of liquidated damages, interest, attorneys' fees, and costs as provided under the New York Labor Law.

## FIFTH CLAIM FOR RELIEF
## (RICO against the Individual Defendant)

84.     Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

85.     The Corporate Defendant is an enterprise as that term is defined under Sections 1961(4) and 1962(c) of RICO, the activities of which affect interstate commerce.

86.     The Individual Defendant is a "person" as that term is defined in Sections 1961(3) and 1962(c) of RICO, and is employed or otherwise associated with the Corporate Defendant.

87.     The Individual Defendant participated in the conduct of the Corporate Defendant's affairs through a pattern and practice of demanding kickbacks from Plaintiffs and others similarly situated in exchange for continuing employment with Corporate Defendant. The Individual Defendant would thereby exploit the fear of economic harm of Plaintiffs and others similarly situated in order to induce them to pay the Individual Defendant.

88.     Said acts on the part of the Individual Defendant constituted extortion, which is chargeable under New York State law and punishable by imprisonment for more than one year, and is indictable under the Hobbs Act, 18 U.S.C. § 1951.

89.     Each such act of extortion constituted a predicate act of racketeering activity as defined by Section 1961(1) and (2) of RICO.

90.     The Individual Defendant agreed with Spiro, Roman, and/or one or more other individuals to participate in a conspiracy to engage in such acts of racketeering activity.

91.     These acts are connected to each other in that they had the same or similar purposes and goals (the unlawful enrichment of the Individual Defendant) and the same or similar

method of commission (the unlawful exertion of influence upon the Plaintiffs and others similarly situated through implied threats to obtain the endorsed paychecks).

92.    The Individual Defendant engaged in numerous instances of such acts during Plaintiffs' employment, constituting hundreds of instances of such acts over a period of approximately four years.

93.    These acts pose a threat of continued racketeering activity projecting into the future, in that these acts constitute the regular way the Defendants conduct their business, and the Individual Defendant has demonstrated his intent to continue in such acts even after the investigation by the Comptroller.

94.    As such, the Individual Defendant engaged in a pattern of racketeering activity as defined by Section 1962 of RICO.

95.    The Individual Defendant's pattern of racketeering activity proximately caused injury to Plaintiffs and others similarly situated, in that the kickbacks demanded by the Individual Defendant directly harmed Plaintiffs and others similarly situated.  Plaintiffs and others similarly situated would not have been harmed if not for the Individual Defendant's racketeering activity.

96.    As a result of the foregoing, Plaintiffs and others similarly situated have been injured in their persons and their property in that they have paid the aforesaid "kick-backs" under duress and fear of economic harm and/or have sustained loss of earnings, mental anguish, and emotional distress; and are therefore entitled to their actual damages, treble damages, punitive damages, costs, and expenses of the suit and reasonable attorney's fees.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and

thereafter Plaintiffs demand a trial by jury and judgment against Defendants as follows:

a.   Compensatory damages in an amount to be determined at trial, including back

pay, front pay, and all benefits to which Plaintiffs were entitled;

b.   Treble damages and punitive damages pursuant to RICO;

c.   Liquidated damages pursuant to New York Labor Law;

d.   Pre-judgment interest; and

e.   Plaintiffs' costs and reasonable attorney's fees.

Together with such other and further relief as the Court deems just.

Dated: New York, New York
         February 5, 2015

                          ROBERT WISNIEWSKI P.C.


                          By: --------------/s/------------------
                              Robert Wisniewski (RW-5308)
                              225 Broadway, Suite 1020
                              New York, New York  10007
                              (212) 267-2101
                              Attorneys for Plaintiffs

**EXHIBIT 1**

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR
SERVICES RENDERED**

TO:    EFSTRATIOS BENARDIS

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that GRZEGORZ TUTKA and EDWARD POLTORAK, on behalf of themselves and on behalf of all others similarly situated, intend to charge you and hold you personally liable as one of the ten largest shareholders of OPTIMUM CONSTRUCTION, INC., for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them for the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: New York, New York
        February 5, 2015

ROBERT WISNIEWSKI P.C.

By: ---------------/s/----------------
Robert Wisniewski (RW-5308)
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, New York  10007
(212) 267-2101

## DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW

TO:

> Optimum Construction, Inc.
> 23-73 48th Street
> Long Island City, NY 11103

PLEASE TAKE NOTICE, that GRZEGORZ TUTKA and EDWARD POLTORAK, as employees of the above corporation who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants, and/or employees of the above corporation for services performed by them for the above corporation within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation, and who have expressly authorized the undersigned, as their attorney, to make this demand on his behalf,

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and record of shareholders of the above corporation and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: New York, New York
February 5, 2015

ROBERT WISNIEWSKI P.C.

By: -------------/s/------------------
Robert Wisniewski (RW-5308)
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, New York 10007
(212) 267-2101