```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
GREZGORZ TUTKA and EDWARD          :
POLTORAK,                          :
                                   :
                    Plaintiffs,    :
                                   :
          -against-                :     **MEMORANDUM AND ORDER**
                                   :     15-CV-604 (DLI)(CLP)
OPTIMUM CONSTRUCTION, INC. and     :
EFSTRATIOS BERNARDIS,              :
                                   :
                    Defendants.    :
---------------------------------------------------------- X
```

**DORA L. IRIZARRY, Chief Judge:**

Plaintiffs Grezgorz Tutka ("Tutka") and Edward Poltorak ("Poltorak") (collectively, "Plaintiffs") filed the instant action on February 6, 2015, against their former employer, Optimum Construction, Inc. ("Optimum") and its corporate owner, Efstratios Bernardis ("Bernardis") (collectively, "Defendants"), on behalf of themselves and those similarly situated, alleging that Defendants failed to pay prevailing wages for public works projects and required Plaintiffs to kickback a portion of their wages to them in order to maintain their employment in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 *et seq.*, and New York Labor Law ("NYLL") 12 N.Y.C.R.R. §§ 135-146, *et seq.* (*See generally* Complaint ("Compl."), Dkt. Entry No. 1.) Plaintiffs also seek damages for unpaid wages and unpaid prevailing wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*

Defendants move to dismiss this action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) contending that Plaintiffs' claims for relief are subsumed by the settlement of wage claims between Defendants and the Comptroller of the City of New York ("Comptroller"). (*See generally* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss All Claims for Relief of the Subject Complaint ("Def.

Mem. of Law"), Dkt. Entry No. 18-2.)  Plaintiffs counter that the settlement did not compel the recovery of prevailing wages for the entirety of their respective employment periods.  For the reasons set forth below, Defendants' motion to dismiss is granted, without prejudice, and Plaintiffs are granted leave to amend the Complaint in accordance with this Memorandum and Order.

## BACKGROUND[1]

Optimum is a general contracting firm that provides construction services for various projects in the New York City market.  (Compl. at ¶ 16.)  Bernardis is the owner and operator of Optimum and is individually responsible for the payment of laborers' wages under the New York General Business Law ("NYGBL").  (*Id*. at ¶ 9.)  Defendants entered into contracts with the New York City Department of Parks and Recreation ("NYCDPR") to perform publicly financed projects for the City of New York.  (*Id*. at ¶ 20.)  Defendants worked as general contractors on each of these projects.  (*Id*. at ¶ 21.)

On September 1, 2010, Defendants entered into an oral agreement with Tutka whereupon Tutka would work as a laborer for Defendants at a salary of $1,000.00 per week.  (Compl. at ¶ 17.)  Tutka worked for Defendants from September 1, 2010 to January 13, 2014, as a laborer.  (*Id.*)

On December 27, 2012, Defendants entered into an oral agreement with Poltorak whereupon Poltorak would work as a laborer for Defendants at a salary of $700.00 per week.  (Compl. at ¶ 18.)  Poltorak ultimately worked for Defendants from December 27, 2012 to February 7, 2014, also as a laborer.  (*Id.*)

Plaintiffs were employed by Defendants to work specifically on two public improvement projects known as:  Reconstruction of Weeping Beach Playground and Reconstruction of Comfort

---

[1] The following facts are taken entirely from the Complaint, which is presumed to be true at this stage of the proceeding.  *See, e.g.*, *Dejesus v. HG Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013).

Stations and Facilities at Various Parks Citywide. (Affidavit of Richard M. Howard[2] ("Howard Aff.") at ¶ 3, Dkt. Entry No. 18-1.) However, Plaintiffs worked on at least twelve other public works projects during their respective employment with Defendants, including: (1) Harris Field Park; (2) Randall Island Park; (3) a park located in Staten Island; (4) Highbridge Park; (5) Williamsburg Park; (6) Inwood Park; (7) Mayfair Park; (8) Corona Park; (9) South Pacific Playground; (10) Thomas Green Playground; (11) Forrest Park Tennis Court; and (12) Beach Channel Playground[3] (collectively, "the Other Park Projects"). (Compl. at ¶ 22a-l.)

Under NYLL § 220(3)(a), Defendants are obligated to ensure that their employees who work on projects under NYCDPR contracts are paid prevailing wages. (Compl. at ¶ 31.) The invoices that Defendants submitted to NYCDPR billed for the work of Plaintiffs and other similarly situated employees at prevailing wages. (*Id*. at ¶ 25.) However, instead of paying Plaintiffs and other similarly situated employees the prevailing wages remitted by NYCDPR, Defendants required their employees to kick their wages back to Defendants in order to remain employed. (*Id*. at ¶¶ 4, 26.) Specifically, Defendants compelled Plaintiffs and other workers to endorse their prevailing wage paychecks back to Defendants and Defendants, in turn, would pay Plaintiffs and other similarly situated employees substantially smaller wages in cash. (*Id*. at ¶¶ 26, 30.) If any of Defendants' laborers refused to comply with the kickback scheme, they were terminated summarily. (*Id*. at ¶ 27.)

---

[2] Richard M. Howard is a partner at the law firm of Meltzer, Lippe, Goldstein & Breitstone LLP and serves as legal counsel for Defendants in this matter. (Howard Aff. at ¶¶ 1, 2.)

[3] Plaintiffs have not stated with any degree of clarity in their submissions to the Court whether these eleven projects were included in their administrative complaint to the Comptroller. The Court finds peculiar that the administrative complaint and the Comptroller's decision thereon would address only two projects and not the eleven other projects that Plaintiffs list in their complaint. Furthermore, Plaintiffs have not adequately established the time frames in which they engaged in each of these public improvement projects.

3

On April 17, 2013, Plaintiffs filed a written complaint with the Comptroller seeking payment for the unpaid prevailing wages and supplements to which they are entitled under NYLL. (Compl. at ¶ 33.)  The Comptroller filed a claim against Defendants on behalf of Plaintiffs and other similarly situated employees seeking restitution of unpaid prevailing wages.  (*Id*. at ¶ 34.)  The claim period encompassed the two years prior to the date that Plaintiffs filed the administrative complaint—April 2011 to April 2013.  (*Id*. at ¶¶ 34, 35.)

On April 17, 2014, the Comptroller's claim was settled pursuant to a Stipulation of Settlement and Order & Determination ("Settlement"), whereupon Tutka was awarded $141,969.51 in unpaid wages, while Poltorak was awarded $26,299.75 in unpaid wages.  (*Id*. at ¶ 36.)  However, Plaintiffs contend that they worked for Defendants on projects subject to NYCDPR contract provisions beyond the scope of the Comptroller's claim period.  (*Id*. at ¶ 38.)  Specifically, Tutka claims that the Settlement failed to compensate him for work performed from September 1, 2010 to April 17, 2011 and from April 17, 2013 to January 13, 2014.  (*Id*.)  Similarly, Poltorak contends that the Settlement did not grant him recovery of unpaid wages for work he performed from April 17, 2013 to February 7, 2014.  (*Id*.)  Plaintiffs had conditioned their acceptance of the Settlement on retaining the right to pursue Defendants for the remainder of the unpaid wages.  (*Id*. at ¶ 39.)  Plaintiffs memorialized this condition on July 18, 2014, when they executed releases reserving their rights against Defendants for amounts not covered in the Settlement.  (*Id*.)

Plaintiffs now assert the following causes of action against Defendants for the remaining unpaid prevailing wages:  (1) breach of contract; (2) quantum meruit; (3) third party beneficiary claim for prevailing wages; (4) illegal kickbacks in violation of NYLL § 193-b; and (5) civil RICO.  (*Id*. at ¶¶ 63-95.)  Plaintiffs seek compensatory, treble, punitive and liquidated damages, as well as pre-judgment interest and reasonable attorneys' fees and costs for their claims.

Defendants counter that the Settlement covered the relevant period during which Plaintiffs did not receive prevailing wages and nullifies Plaintiffs' additional claims. (*See generally* Def. Mem. of Law.) Defendants specifically argue that, because NYLL § 220-b authorizes the Comptroller to investigate up to three years of alleged wage payment improprieties committed prior to the filing of an administrative complaint, the Settlement must have subsumed all of Plaintiffs' claims for work performed under the NYCDPR contracts. (Howard Aff. at ¶ 7.)

## DISCUSSION

### I.   Motion to Dismiss Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For this reason, "[t]hreadbare recitals of the elements of a cause of action,

5

supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007). The determination of whether a complaint states a plausible claim for relief signifies a content-specific task requiring the reviewing court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

## II.     New York Labor Law Claims

Plaintiffs seek to recover "unpaid prevailing wages and kickbacks, liquidated damages, and reasonable attorneys' fees and costs under Articles 6, 8, and 19 of the New York Labor Law and various wage orders promulgated thereunder by the New York State Department of Labor …, as well as the common law of the State of New York." (Compl. at ¶ 2.)

### A.  Article 6 of the New York Labor Law—Illegal Kickback Claim

Article 6 of the NYLL regulates the payment of wages by employers to employees. *Beng Soon Lim v. Harvest International Realty, Inc.*, 2009 WL 4110382, *4 (E.D.N.Y. Nov. 23, 2009); *see Patcher v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 614 (2008). Here, Plaintiffs assert a claim against Defendants of advancing an illegal kickback scheme in violation of NYLL § 193, which falls under Article 6 of the NYLL.[4] (Compl. at ¶¶ 79-83.) NYLL § 193 prohibits employers

---

[4] Notably, Plaintiffs do not assert any claims arising under NYLL § 198-b, which specifically prohibits the kickback of wages. N.Y.L.L. § 198-b (McKinney 2016). Whereas NYLL § 193 prohibits employers from making any deduction from an employee's wages, excepts as required by law or regulation, or authorized by the employee for the employee's benefit, NYLL § 198-b(2) proscribes employers from requesting, demanding or receiving a portion of an

6

"from taking money from their employees for the employer's own benefit." *Koljenovic v. Marx*, 999 F. Supp.2d 396, 402 (E.D.N.Y. 2014) (internal quotation marks and citations omitted). The statute of limitations for wage claims arising under NYLL § 193 is six years. *Id*. at 404.

According to the Complaint, Plaintiffs were compelled to surrender a significant portion of their prevailing wages to Defendants in return for lower cash wages as a condition of continuing their employment. (Compl. at ¶¶ 81, 82.) In adhering to the *Iqbal* standard of accepting all factual allegations as true, the Court accepts Plaintiffs' assertion that Defendants imposed an illegal kickback regime upon its employees in violation of NYLL § 193-b as true. The six-year statute of limitations period encompasses Plaintiffs' cause of action under NYLL § 193-b for the entirety of their employment with Defendants.

However, as noted above, Plaintiffs fail to plead with particularity the specific public improvement projects on which they worked and the time periods and expected payments that correspond to that work. Accordingly, Defendants' motion to dismiss Plaintiffs' illegal kickbacks claim under is granted without prejudice, and with leave to amend the Complaint to allege with greater specificity the public improvement projects included in both the administrative complaint and the instant Complaint that correspond to the illegal kickbacks claim.

### B. Article 8 of the New York Labor Law—Breach of Contract Claim

Article 8 of the NYLL applies to public works projects and requires an employee to exhaust administrative remedies before bringing a private right of action. N.Y.L.L. § 220(8) (McKinney 2016); *see Ethelberth v. Choice Security Co.*, 91 F. Supp.3d 339, 358 (E.D.N.Y. 2015). Judicial review may not occur until the relevant fiscal officer, in this case, the Comptroller, determines whether wages are due on the employee's claim. *Id*. at 359. Here, Plaintiffs assert a breach of

---

employee's wages upon an understanding that the employee's failure to comply with the request or demand will result in that employee's termination. *Id*.; N.Y.L.L. § 193 (McKinney 2016).

contract claim for prevailing wages provided for by NYLL § 220, which falls under Article 8 of the NYLL. (Compl. at ¶¶ 59-64). Breach of contract actions generally are subject to a six-year statute of limitations. *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 25 (2001).

In order for New York Labor Law § 220 to apply to an action, the following two elements must be satisfied: "(1) the public agency must be a party to a contract involving the employment of laborers, workmen, or, and (2) the contract must concern a public works project." *County of Suffolk v. Coram Equities, LLC*, 31 A.D.3d 687, 688 (2d Dep't 2006) (internal quotation marks and citations omitted).

Here, Plaintiffs satisfied the exhaustion of administrative remedies requirement by filing an administrative complaint with the Comptroller. (Compl. at ¶ 33.) The Comptroller has jurisdiction over this wage underpayment matter, since the contracts involve public work performed on behalf of a public benefit corporation that is incorporated in a city whose population exceeds one million. *See* NYLL § 220(5)(e).

Pursuant to NYLL § 220-b(2)(c), the scope of the Comptroller's investigation shall encompass public improvement "labor performed after the commencement of the three-year period immediately preceding the filing of the complaint or the commencement of the investigation on [the Comptroller's] own initiative." N.Y.L.L. § 220-b(2)(c) (McKinney 2011). The three-year statute of limitations applicable under NYLL § 220-b(2)(c) for investigating a prevailing wage complaint against a contractor on a public contract runs from the time that work is performed until an administrative complaint is filed. *See Pav-Lak Contracting, Inc. v. McGowan*, 184 Misc.2d 386, 388-89 (Sup. Ct. Nassau Co. 2000). Therefore, this particular statute of limitations is only applicable to the filing of administrative complaints with "the comptroller of the state or the financial officer of the municipal corporation or other officer or person charged with the custody

8

and disbursement of the state or corporate funds applicable to" the public improvement contracts. N.Y.L.L. § 220-b(1).

Here, the Comptroller's investigation only covered the two-year period prior to the filing of Plaintiffs' claim. (Declaration of Alan Asher[5] ("Asher Decl.") at ¶ 3, Dkt. Entry No. 18-5.) Notwithstanding the statute's temporal contours, there is no common law precedent mandating that the Comptroller strictly adhere to the outer limit of that investigation range. The Court will not speculate on the Comptroller's reasons for not extending the scope of its investigation to April 2010 to include the earliest portion of Tutka's employment with Defendants. Therefore, the Settlement does not cover Tutka's employment period of September 1, 2010 to April 17, 2011.

The statute unequivocally covers only investigations of claims "*preceding* the filing of the complaint." N.Y.L.L. § 220-b(2)(c) (McKinney 2011) (emphasis added). Hence, any period subsequent to the filing of the complaint could not have been included in the Comptroller's investigation or the Settlement because it falls beyond the statutory limitation period. Accordingly, the employment periods of April 17, 2013 to January 13, 2014 and April 17, 2013 to February 7, 2014 for Tutka and Poltorak, respectively, were not included in the Settlement. Additionally, pursuant to the six-year statute of limitations period applied to breach of contract claims in New York, Plaintiffs' breach of contract claim covers the entirety of their employment with Defendants.

However, Plaintiffs fail to specify what public improvement projects were included in their administrative complaint to the Comptroller. The Settlement covers the work Plaintiffs performed on the Reconstruction of Weeping Beach Playground and the Reconstruction of Comfort Stations and Facilities at Various Parks Citywide. (Howard Aff., Exhibit A, Stipulation of Settlement, Dkt. Entry No. 18-1.) It is not clear whether the Other Park Projects are separate and apart from the

---

[5] Alan Asher is an attorney who represented Plaintiffs when they filed their claims with the Comptroller. (Asher Decl. at ¶ 1.)

9

aforementioned projects or are encompassed by the label "Reconstruction of Comfort Stations and Facilities at Various Parks Citywide." (Compl. at ¶¶ 21, 22.) Neither party attached the administrative complaint to their papers. As such, Plaintiffs have not demonstrated that they exhausted their administrative remedies in connection with the Other Park Projects. Plaintiffs are granted leave to amend the Complaint to include this information.

### C. Article 19 of the New York Labor Law

Article 19 of the NYLL is the New York State Minimum Wage Act. *Carter v. State*, 87 A.D.3d 25, 27 (2d Dep't 2011). Although Plaintiffs reference this article in their Complaint, they did not assert any specific claims under this statute and, as such, the claim is dismissed without prejudice. As the Court already grants leave to amend the Complaint as to the state claims discussed above, Plaintiffs also are granted leave to amend the Complaint as to allege facts relating to this claim.

### III. Signed Releases

"A release is a species of contract and 'is governed by principles of contract law.'" *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001) (quoting *Bank of America National Trust and Savings Association v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)). Much like the interpretation of an unambiguous contract, the interpretation of such a release is a question of law reserved for the court. *Id*. at 515. "Under New York law, a release—like any contract—must be construed in accordance with the intent of the parties who executed it." *Id*. Courts will not give effect to a release unless it contains "'an explicit, unequivocal statement of a present promise to release [a party] from liability.'" *Id*. (quoting *Gillaizeau*, 766 F.2d at 713). Because the law generally disfavors the absolution of a party from the consequences of malfeasance, a release that purports to excuse such a party is subject to a high level of judicial scrutiny. *Id*.

10

Here, the releases signed by both Plaintiffs lack ambiguity, notwithstanding the clause in the fourth paragraph that reserves Plaintiffs' rights for "any and all claims . . . not covered in the Comptroller's Order and Determination dated April 24, 2014." (Howard Aff., Exhibit B, Releases and Withdrawals of Prevailing Wage Rate Claims, Dkt. Entry No. 18-1.) The clause unequivocally preserves Plaintiffs' rights to pursue an action against Defendant to recover amounts not covered by the Settlement.

The Settlement covers labor performed under contracts for both the Reconstruction of Weeping Beach Playground and Reconstruction of Comfort Stations and Facilities at Various Parks Citywide. (Howard Aff., Exhibit A, Stipulation of Settlement.) Nothing in the record indicates the exact dates on which Plaintiffs performed work on these two projects. Defendants therefore argue that, because the Settlement is reticent with respect to the time period to which it applies, it must be presumed to encompass the entirety of Plaintiffs' claims. (Defendants' Reply Memorandum of Law ("Def. Reply") at 2, Dkt. Entry No. 18-7.) As noted above, the record does not indicate which projects or their respective time periods were included in Plaintiffs' administrative complaint to the Comptroller. As such, the Complaint does not establish whether the Other Park Projects were covered in the administrative complaint or the releases. Notably, neither party attached the administrative complaint to their papers.

Therefore, Defendants' motion to dismiss Plaintiffs' causes of action for breach of contract and quantum meruit is granted without prejudice, and Plaintiffs are granted leave to amend the Complaint to allege with greater specificity which public improvement projects were included in their administrative complaint and the time periods in which each Plaintiff worked on said projects.

### IV. Third Party Beneficiary Breach of Contract Claim

Under New York law, a third party may enforce a contract if that third party is an intended beneficiary of that contract. *Chen v. Street Beat Sportswear, Inc.*, 226 F. Supp.2d 355, 361 (E.D.N.Y. 2002). New York law specifically permits the pursuit of contractual remedies as third party beneficiaries of state prevailing wage contracts. *Sobczak v. AWL Industries, Inc.*, 540 F. Supp.2d 354, 361 (E.D.N.Y. 2007). A non-party to a contract may recover "'by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit, and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties to compensate him if the benefit is lost.'" *Chen*, 226 F. Supp.2d at 361-62 (quoting *Cabrera v. DeGuerin*, 1999 WL 438473, at *4 (E.D.N.Y. May 18, 1999)). "A contract is intended for the benefit of a third-party if (1) 'no one other than the third party can recover if the promisor breaches the contract or (2) the language of the contract otherwise evidences an intent to permit enforcement by third parties.'" *Id.* at 362 (quoting *MBL Contracting Corp. v. King World Productions, Inc.*, 98 F. Supp.2d 492, 496 (S.D.N.Y. 2000)).

Here, the first element is satisfied because the agreement between NYCDPR and Defendants is a valid and binding contract between parties other than Plaintiffs. With respect to the second element, Plaintiffs contend that the intent to benefit and permit enforcement of the contracts by Plaintiffs as intended third parties is clear from the statutory structure of the contracts and the language of the NYLL. These contracts entered into between NYCDPR and Defendants are subject to the statutory provisions of NYLL § 220 mandating that Defendants pay its laborers prevailing wage rates. (Compl. at ¶¶ 24, 71-78.) Thus, the contracts redound to the dual benefit of the municipality in the form of park beautification and the laborers in the form of proper

12

compensation.  Similarly, no one other than Plaintiffs as third parties can recover for Defendants' failure to pay a prevailing rate of wages.  Finally, the benefit to Plaintiffs of being paid prevailing wage rates is sufficiently immediate because failure to comply with this provision of the NYLL can result in the filing of an administrative action with the Comptroller to compel payment of those wages.

However, Plaintiffs fail to make clear which specific public improvement projects are included in their third party beneficiary claim.  It is not sufficient merely to state in the Complaint, "[p]laintiffs worked on a number of projects pursuant to Defendants' contracts with DPR, including [sic] without limitation [sic] the following", followed by an enumeration of twelve projects. (*Id*. at ¶ 22a-l.)  Such lack of clarity does not apprise the Court of the scope of either the administrative complaint, the settlement, or of the claims alleged in the Complaint.  Accordingly, Defendants' motion to dismiss Plaintiffs' third party beneficiary claim is granted without prejudice and with leave to replead with greater specificity the public improvement projects included in both the administrative complaint and the Complaint that commenced this action.

## V.    RICO Claim

### A.  Standard of Review

To establish a civil RICO claim, "a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotation marks omitted).  The pattern of racketeering activity must consist of two or more predicate acts of racketeering pursuant to 18 U.S.C. § 1961(5).  *Id*.  Furthermore, in order to survive a motion to dismiss a RICO claim, Plaintiffs' allegations "must also satisfy the requirement that, '[i]n alleging fraud or mistake, a party must state with particularity the

13

circumstances constituting fraud or mistake.'" *Id*. (quoting Fed. R. Civ. P. 9(b)).  Additionally, as a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite, thus rendering the RICO claim ripe for review.  *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 770 F. Supp.2d 497, 520 (E.D.N.Y. 2011).  Furthermore, "a plaintiff 'must allege that the defendant's violations were a proximate cause of the plaintiff's injury, *i.e.*, that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct'" in order to sustain a civil RICO claim.  *Id*. (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)).

Here, Plaintiffs sufficiently alleged that:  (1) Defendants compelled its workers to surrender a portion of their respective paychecks to Defendants in exchange for keeping their employment; (2) Defendants Optimum and Bernardis constitute an enterprise under 18 U.S.C. § 1961(4); (3) the periodic basis by which Defendants would compel its workers to submit their respective paychecks to Defendants demonstrated a pattern of racketeering activity insofar as it comprised at least two predicate acts; and (4) Plaintiffs suffered injury because they were deprived of a prevailing rate of wages pursuant to Defendants' conduct.  (Compl. at ¶¶ 26-30, 84-96.)  Furthermore, the amount of damages clearly has been established as the amount of prevailing wages that Defendants failed to pay Plaintiffs, exclusive of the time period covered by the Settlement.

### B.  Statute of Limitations

"RICO claims are subject to a four-year statute of limitations."  *Koch v. Christie's International PLC*, 699 F.3d 141, 148 (2d Cir. 2012).  Here, Tutka only will be eligible for relief under his RICO claim for work on public improvement projects performed as of February 6, 2011 pursuant to the four-year statute of limitations.  Moreover, the RICO claim suffers from the same deficiencies noted above, namely, the claim fails to specify the public improvement projects on

14

which Plaintiffs worked and the time periods that Plaintiffs worked on each one.  Accordingly, Defendants' motion to dismiss the civil RICO cause of action is granted without prejudice, and Plaintiffs are granted leave to replead with greater specificity the projects included in the Complaint and the time periods associated with each project, putting forth claims that fall within the civil RICO four-year statute of limitations.

## VI.     FLSA Claim

"The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'"  *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014) (quoting 29 U.S.C. § 255(a)).  Furthermore, "[t]o qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented [her] from filing [her] claim on time, and [s]he acted with reasonable diligence throughout the period [s]he seeks to toll."  *Phillips v. Generations Family Health Center*, 723 F.3d 144, 150 (2d Cir. 2013).

The applicable statute of limitations here requires a factual determination regarding Defendants' knowledge or reckless disregard of the fact that they were legally required to pay Plaintiffs and other similarly situated employees prevailing wages for work performed on the public improvement projects.  Plaintiffs have pled sufficiently that Defendants imposed a wage kickback scheme on its employees in willful violation of NYLL § 220 and the FLSA.  However, Plaintiffs fail to demonstrate that they are eligible for equitable tolling with respect to their FLSA claim as they do not present any extraordinary circumstances in the Complaint or their opposition papers that prevented them from filing this claim when they first realized that they were being deprived of prevailing wages.

Furthermore, with respect to Tutka's FLSA claim, the three-year statute of limitations bars the Court from reviewing his claims from September 1, 2010 through February 5, 2012. However, Plaintiffs claims from February 6, 2012, to the filing of the Complaint on February 6, 2015, fall within the FLSA's statute of limitations. Therefore, Defendants' motion to dismiss Plaintiffs' FLSA claim is granted, without prejudice, and Plaintiffs are granted leave to amend the Complaint as to the proper time period authorized by the statute of limitations.

## CONCLUSION[6]

For the foregoing reasons, Defendants' motion to dismiss this action is granted without prejudice, and Plaintiffs are granted leave to file an amended complaint in accordance with this Memorandum and Order no later than October 17, 2016. Plaintiffs are directed to attach a copy of the administrative complaint, settlement agreement and release(s) related to this action to their amended complaint.

SO ORDERED.

Dated: Brooklyn, New York
       September 16, 2016

                                                          /s/
                                                    DORA L. IRIZARRY
                                                       Chief Judge

---

[6] The Court was disappointed in the quality of the briefs submitted in connection with this action, which were not overly helpful to the Court. For example, Defendants' memorandum of law does not provide a clear analysis of the relevant case law, but rather it is merely a listing of Westlaw headnotes. Defendants' brief was not helpful in the Court's determination of whether Plaintiffs had administratively exhausted their remedies for the other eleven contracts listed in their complaint because it failed to clarify what contracts were covered by the administrative complaint. The Court urges both parties to take greater care in the drafting of its filings. Furthermore, it is inappropriate for counsel to attach as exhibits documents that contain handwritten notes. Please provide clean copies of all submissions. In addition, do not clutter the docket by filing documents as exhibits that have been filed already.