ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GRZEGORZ TUTKA and EDWARD POLTORAK,
on behalf of themselves and all others similarly situated,

                **Docket No:** 15-cv-00604 (DLI)(CLP)

          Plaintiffs,

                **CLASS ACTION**

      -against-

                **JURY TRIAL DEMANDED**

OPTIMUM CONSTRUCTION, INC., and
EFSTRATIOS BENARDIS, individually,

          Defendants.
-----------------------------------------------------------------X

## AMENDED RICO COMPLAINT

1.    Plaintiffs Grzegorz Tutka ("Tutka") and Edward Poltorak ("Poltorak"), on behalf of themselves and all others similarly situated, by and through their attorneys, Robert Wisniewski P.C., as and for their Amended Complaint against Defendants Optimum Construction, Inc. ("Optimum" or the "Corporate Defendant"), and Efstratios Benardis ("Benardis" or the "Individual Defendant") (Optimum and Benardis are collectively hereinafter referred to as the "Defendants") allege as follows:

## NATURE OF THE ACTION

2.    Plaintiffs, on behalf of themselves and others similarly situated, bring this action to recover unpaid wages, liquidated damages and reasonable attorneys' fees under Articles 6, 8, and 19

-1-

of the New York Labor Law and the various wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("New York Labor Law"), and the common law of the State of New York.

3.  Plaintiffs also bring this action to recover actual damages, treble damages and punitive damages for violations of the Organized Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations (18 U.S.C. § 1964) ("RICO").

4.  The Corporate Defendant is a general contractor who performs construction work for various projects in the New York City area.

5.  The Individual Defendant is an officer, shareholder, manager and/or majority owner of the Corporate Defendant.

6.  Plaintiffs performed work and services as laborers of Defendants.

7.  Plaintiffs also bring this action on behalf of themselves and all others similarly situated for unpaid prevailing wages and for engaged in an illegal kickback scheme under Article 8 of the New York Labor Law.

8.  Plaintiffs and all others similarly situated worked as laborers for the Defendants' construction business.  Furthermore, Plaintiffs and others similarly situated provided work for all Defendants pursuant to public work contracts Defendants enacted with government instrumentalities without being paid the prevailing wages required by those contracts and under applicable law.

## **PARTIES, JURISDICTION AND VENUE**

9.  Plaintiff Tutka, at all relevant times herein, was and is a resident of the State of New York, Kings County.

10.     Plaintiff Poltorak, at all relevant times herein, was and is a resident of the State of New York, Queens County.

11.     The Corporate Defendant, at all relevant times herein, was and is a corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business at 23-73 48th Street, Long Island City, New York, 11103.

12.     Upon information and belief, the Individual Defendant is a resident of the State of New York, Queens County.

13.     The Individual Defendant is an officer, director, manager and/or majority shareholder or owner of the Corporate Defendant, and as one of the ten largest shareholders is individually responsible for unpaid wages under the New York Business Corporation Law (**See Exhibit 1**).

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under 18 U.S.C. §1964 (RICO). This Court has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

15.     The Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce in that the employees of said Defendants handle, sell or otherwise work on goods or materials that have been moved in or produced for interstate commerce, and Defendants are thus employers subject to the jurisdiction of the RICO.

16.     This Court has personal jurisdiction over the Corporate Defendant in that it is incorporated in the State of New York and has its principal place of business therein.

17.     This Court has personal jurisdiction over the Individual Defendant in that they are citizens

and residents of the State of New York, and/or they maintain continuous contacts with New York and transact a substantial amount of business in New York.

18.    This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391(b).

## JURY DEMAND

19.    Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

*Facts Relating to Plaintiffs' Employment*

20.    Plaintiffs and all others similarly situated are, and were, persons covered by, and or intended to benefit from, the provisions of the New York Labor Law, the common law of the State of New York, and the state wage orders codified in 12 N.Y.C.R.R.§§ 137-143 in respect to their work for Defendants.

21.    At all times herein, the Corporate Defendant transacted and still transacts substantial business and derived and still derives substantial revenue from services rendered in the State of New York.

22.    The Corporate Defendant is a general contractor who performs construction work for various projects in the New York City area.

23.    The Individual Defendant was and still is an owner, director, officer, manager, employee and/or agent of the Corporate Defendant and has, jointly and severally, exercised operational control over the Corporate Defendant.

24.    The Corporate Defendant, through the Individual Defendant, entered into an oral contract for employment with Plaintiffs whereby Plaintiffs would receive specific weekly wage rates in

exchange for performing work and services as laborers for Defendants.

25. Pursuant to Tutka's oral contract with the Corporate Defendant, Tutka agreed to be paid $200 per day for eight hours of work.

26. Pursuant to Poltorak's oral contract with the Corporate Defendant, Poltorak agreed to be paid $140 per day for eight hours of work.

27. Plaintiff Tutka worked for Defendants as a laborer from approximately September 1, 2010 to January 13, 2014, and was paid at a rate of one-thousand dollars ($1,000.00) weekly in cash.

28. At all times throughout his employment, Plaintiff Tutka worked from 7 AM to 3:30 PM, with a thirty (30) minute break for lunch, five (5) days a week.

29. Plaintiff Poltorak worked for Defendants as a laborer from approximately December 27, 2012 until February 7, 2014, at a rate of seven-hundred dollars ($700.00) weekly in cash.

30. Plaintiff Poltorak regularly worked worked from 7 AM to 3:30 PM, with a thirty (30) minute break for lunch, five (5) days a week.

***Facts Relating to Plaintiffs' City Comptroller Case and Defendants' Failure to Pay Prevailing Wages***

31. New York Labor Law § 220 provides that the wages to be paid to workers upon public work shall not be less than "prevailing rate of wages."

32. At all relevant times herein, Plaintiffs satisfactorily supplied labor in connection with, and in furtherance of, the work required by Defendants; and in doing so, complied with the terms of their employment agreements with Defendants.

33. Throughout their employment, Defendants shortchanged Plaintiffs and all others similarly

situated, in a kickback scheme whereby Defendants would issue payroll checks at the required "prevailing wage" rate and require Plaintiffs and all others similarly situated to endorse the checks back to Defendants. Defendants would keep part of the wages and would give significantly lower wages in cash to Plaintiffs and all others similarly situated.

34. Defendants entered into contracts with the New York City Department of Parks and Recreation ("DPR") and upon information and belief, with other governmental instrumentalities to perform publicly-financed projects, *i.e.*, city and state projects. Under said contracts, the Defendants perform general contract work with various governmental instrumentalities.

35. Defendants performed work on contracts entered into between them and, among other govenrmental instrumentalities, the DPR, which were covered by the relevant provisions of the New York Labor Law relating to "prevailing wages" to be paid to employees of Defendants. Plaintiffs were frequently rotated among the various projects as directed by the Defendants, which meant that Plaintiffs would often perform work at multiple work sites during any given month of their employment.

36. These projects on which Defendants were a general contractor that were covered by the New York Labor Law included, but were not limited to, work performed under the following DPR contracts (the "Known Contracts"):

a. New York City Department of Parks and Recreation - Contract # 201042396/Q022-106M for the "Reconstruction of Weeping Beach Playground"; and

b. New York City Department of Parks and Recreation - Contract # 201001424275/CYNG-209M for the "Reconstruction of Comfort Stations and

Facilities at Various Parks Citywide."

37.     The projects that both Plaintiffs worked on for Defendants under their respective contracts

with the DPR and/or other governmental instrumentalities, including but not limited to the

Known Contracts, included, but were not limited to:

a.      Harris Field Park, Goulden Avenue, Bronx, New York, at which Plaintiffs worked

sporadic days in the time period from approximately January through April, 2013,

and again from approximately July, 2013, September through October, 2013, and

January through February, 2014;

b.      Randall's Island Park, on Randall's Island, New York, at which Plaintiffs worked

sporadic days in February, 2014;

c.      Cedar Grove Beach, Staten Island, New York, at which Plaintiffs worked sporadic

days from approximately January, 2013 though June, 2013;

d.       Highbridge Park, Amsterdam Avenue, New York, New York, at which Plaintiffs

worked sporadic days from approximately March, 2013 through June, 2013;

e.      Williamsbridge Playground, Bronx, New York, at which Plaintiffs worked sporadic

days from approximately May, 2013 through June, 2013;

f.      Inwood Hill Park, New York, New York, at which Plaintiffs worked sporadic days

from approximately July, 2013 through September, 2013, and again from

approximately November, 2013 through February, 2014;

g.      Flushing-Meadows Corona Park, at which Plaintiffs worked sporadic days in

approximately November, 2013; and

h.      Bushwick Playground Comfort Station, Brooklyn, New York, at which Plaintiffs

worked for approximately two weeks sometime in 2013.

37.     Additionally, plaintiff Tutka worked for Defendants under their respective contracts with the DPR and/or other governmental instrumentalities, including but not limited to the Known Contracts, on the following additional projects:

i.      Carver Playground, Brooklyn, New York, at which Tutka worked sporadic days from September, 2010 through December, 2010;

j.      Hammel Playground, Queens, New York, at which Tutka worked sporadic days from October, 2010 through November, 2010;

k.      Forest Park Tennis Court, Queens, New York, at which Tutka worked sporadic days in approximately January, 2011 and February, 2012;

l.      Weeping Beach Park, Queens, New York, at which Tutka worked sporadic days from approximately January, 2011 through November, 2011;

m.       Thomas Greene Park, Brooklyn, New York, at which Tutka worked sporadic days during the the relevant time period;

n.      South Pacific Playground, Brooklyn, New York at which Tutka worked sporadic days during the relevant time period.

38.     On or about April 17, 2013, Plaintiffs filed written complaints with the Comptroller of the City of New York (the "City Comptroller"), seeking payment for the unpaid prevailing wages and supplements due to them, pursuant to Section 220, *et seq*. of the New York Labor Law.

39.     Thereafter, the City Comptroller filed a claim on behalf of Plaintiffs and other employees of Defendants who claimed to have not been paid prevailing wages and supplements for work performed pursuant to the Known Contracts, seeking payment for two (2) years prior to the

April 17, 2013 date of filing Plaintiffs' complaints.

40.   Accordingly, the City Comptroller was seeking wages on behalf of the Plaintiffs for the time period from on or about April 17, 2011 to April 17, 2013.

41.   On April 17, 2014, the claims of Plaintiffs and other employees of the Corporate Defendant which were investigated by the City Comptroller's Office were settled pursuant to a Stipulation of Settlement and Order & Determination entered into between the City Comptroller and Defendants.  **(See Exhibit 2)**.

45.   There has been no appeal from the Stipulation of Settlement and Order & Determination, and the time do so has expired.

46.   The City Comptroller's Office has confirmed that the settlement covered only the time period extending two (2) years immediately preceeding the filing of Plaintiffs' complaints with that Office.

47.   Tutka performed work and services for the Defendants pursuant to, among other prevailing wage contracts, the Known Contracts, both prior to the two (2) year period immediately preceding of the filing of his complaint with the City Comptroller, and subsequent to the filing of his complaint, for which he was also not paid a prevailing wage and supplements owed to him.  Therefore, Tutka is still owed prevailing wages and supplements owed to him for the time periods of September 1, 2010 to April 17, 2011, and April 17, 2013 to January 13, 2014, respectively, in connection with work performed for the Defendants pursuant to prevailing wage contracts, including but not limited to the Known Contracts.

42.   Poltorak also performed work and services for the Defendants pursuant to, among other prevailing wage contracts, the Known Contracts, subsequent to the filing of his complaint

with the City Comptroller, for which he was not paid a prevailing wage and supplements owed to him. Therefore, Poltorak is still owed prevailing wages and supplements owed to him for the time period of April 17, 2013 to February 7, 2014, in connection with work performed for the Defendants pursuant to prevailing wage contracts, including but not limited to the Known Contracts.

43. The City Comptroller's Office has confirmed that the settlement entered into between that Office and Defendants only covered work performed by, *inter alia*, Plaintiffs for the two year period immediately preceding Plaintiffs' filing of complaints with the City Comptroller's Office.

44. Pursuant to the Stipulation of Settlement and Order & Determination, Tutka was awarded the sum of $141,969.51, which included interest, and Poltorak was awarded the sum of $26,299.75, which included interest.

47. The settlement awards to both Tutka and Poltorak did not fully compensate them for all wages and supplements earned by Plaintiffs, but not paid, during the 2-year span encompassed by the City Comptroller's Stipulation of Settlement and Order & Determination with Defendants.

48. When the Defendants entered into the prevailing wage contracts with governmental instrumentalities, including but not limited to the Known Contracts with the DPR, to perform the work for which Plaintiffs and others similarly situated provided labor, Defendants were required, under the relevant law and/or contracts, to pay their employees, including the Plaintiffs and all others similarly situated, a "prevailing wage" that was specified in such

contracts or was incorporated by reference into such contracts.

49. Pursuant to the Known Contracts with the DPR, as well as the other prevailing wage contracts Defendants entered into with the DPR or other governmental instrumentalities, Defendants were obligated under NYLL § 220(3)(a) to ensure their employees were paid "prevailing wages" as required by the New York Labor Law.

50. Defendants failed to do so and are therefore liable to Plaintiffs and all others similarly situated for those underpayments.

51. Plaintiffs and all others similarly situated were persons covered by, and/or intended to benefit from, the provisions of New York Labor Law, in respect to their work on the projects for which they provided labor.

***Facts Related to Defendants' Illegal Kickback Scheme and Violation of RICO***

52. Defendants maintained a pattern and practice where Defendants would issue payroll checks at the required "prevailing wage" rate and require Plaintiffs and all others similarly situated to endorse the checks back to Defendants.

53. Defendants would keep part of the wages and would give significantly lower wages in cash to Plaintiffs and all others similarly situated.

54. In paying the kickbacks, Plaintiffs understood that failure to pay such a kickback would result in the loss of employment with Defendants.

***Defendants' Failure to Pay Proper Wages was Willful***

55. Defendants as employers have certain statutory obligations towards employees, including: 1) pay employees the proper "prevailing wage" pursuant to contracts entered into with

-11-

government instrumentalities and under the state wage orders, 2) not engaging in an illegal kickback scheme, and 3) to make, keep, and preserve proper payroll records.

56.  Defendants were aware of their requirement to pay Plaintiff at the proper "prevailing wage" for hours worked on all contracts entered into with various government instrumentalities, including but not limited to the Known Contracts.  Nevertheless , Defendants failed to pay Plaintiffs their proper wage rates.

57.  As such, the various violations of the law which are alleged herein were committed intentionally and willfully by the Defendants.

58.  Tellingly, even after Plaintiffs filed their complaint with the City Comptroller, and the City Comptroller was investigating Defendants' willful violations of the law, Defendants continued to maintain their illegal kickback scheme.

59.  Defendants further willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain proper and complete time sheets or payroll records.

60.  At the very least, Defendants failed to take any steps to ascertain their duties with respect to the payment of wages to employees.

*Facts Regarding Defendants' Status as Joint Employers*

61.  The Individual Defendant had control over the conditions of Plaintiffs' employment, their work schedule, the rates and methods of payment of their  wages, and the maintenance of their employment records.

62.  At all relevant times herein, the Individual Defendant was and still is an owner, director,

officer, manager, employee and/or agent of the Corporate Defendant and conducted business as the Corporate Defendant.

63. At all relevant times herein, the Individual Defendant directly managed, handled or was responsible for the payroll and/or payroll calculations and signing or issuing checks to Plaintiffs. By virtue of his position with the Corporate Defendant, the Individual Defendant was responsible for the management and handling of the payroll and human resources decisions of the Corporate Defendant, including decisions to hire and fire employees.

64. At all relevant times herein, the Individual Defendant had operational control of Plaintiffs' employment by virtue of his financial control over the Corporate Defendant and therefore Plaintiffs' wages, and because he hired and fired managerial employees who supervised Plaintiffs' employment.

65. To Plaintiffs' knowledge and based upon their personal interactions with the Individual Defendant, the Individual Defendant was the "decision maker" of the Corporate Defendant, and had control over every aspect of Plaintiffs' employment.

66. At all relevant times herein, the Individual Defendant has conducted business as the Corporate Defendant.

67. At all relevant times herein, the Individual Defendant has acted for and on behalf of the Corporate Defendant with the power and authority vested in him as officer, agent, and employee of the Corporate Defendant, and has acted in the course and scope of his duties and functions as agent, employee, and officer of the Corporate Defendant.

68. At all relevant times herein, the Individual Defendant had operational control over the

Corporate Defendant.

69.     The Individual Defendant  has willfully and intentionally acted to violate the laws, rules, regulations, statutes and wage orders alleged herein, and by doing so and by virtue of his position as shareholder, director, officer and/or manager of the Corporate Defendant, has assumed personal liability for Plaintiffs' claims.

70.     As a matter of economic reality, Defendants are joint employers of Plaintiffs; and, as a result, Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

### *The Corporate Defendant is the Alter Ego of the Individual Defendant*

71.     At all times herein, the Individual Defendant used the Corporate Defendant in order to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose.

72.     Upon information and belief, the Individual Defendant failed to comply with the corporate formalities, usurped the assets of the Corporate Defendant for personal use, and commingled his personal assets with the assets of the Corporate Defendant.

73.     The Corporate Defendant is the alter-ego of the Individual Defendant; and, as will be established at trial, for the purpose of Plaintiffs' claims, the Corporate Defendant has no separate legal existence from the Individual Defendant.  As a result, Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

### CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring this action on behalf of themselves and all other persons who were or are

-14-

employed by Defendants as laborers or performing similar tasks and performed work, labor and services but did not receive the compensation required by the New York Labor Law, and the common law of the State of New York.

75. Upon information and belief, this class of persons consists of not less than forty (40) persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23 (a)(1).

76. There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically: whether the employment of the Plaintiffs and others similarly situated by Defendants is subject to the jurisdiction and requirements of the New York Labor Law and the common law of New York and whether Plaintiffs and others similarly situated suffered from Defendants' policy or plan not to pay proper wages. Only the amount of individual damages sustained by each class member will vary.

77. The claims of Plaintiffs are typical of the claims of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of the Defendants.

78. Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

79. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

80. Plaintiffs bring all claims for relief herein on behalf of themselves and all persons similarly

situated as a class action pursuant to Federal Rule of Civil Procedure 23, in respect to all claims that Plaintiffs and all persons similarly situated have against the Defendants as a result of Defendants' violations under the New York Labor Law and the common law of the State of New York.

## FIRST CLAIM FOR RELIEF
**(Third Party Beneficiary Claim for Prevailing Wages against Defendants)**

81.   Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

82.   Plaintiffs and others similarly situated were persons covered by, or the intended third-party beneficiaries of, the contracts entered into by the Defendants with the DPR and other governmental instrumentalities to perform work on public works, which were covered by the provisions of New York Labor Law.

83   In accordance with the terms and conditions of the Defendants' contracts with the DPR and other governmental instrumentalities, and the relevant provisions of the New York Labor Law relating to prevailing wages and supplements to be paid to employees of the Defendants, Plaintiffs should have been paid the prevailing wage and prevailing wage supplements for the work and labor Plaintiffs supplied in connection with and in furtherance of the work contemplated by such contracts.

84.   Defendants knowingly and willfully failed or refused to pay Plaintiffs the prevailing wage and prevailing wage supplements for regular hours of work in connection with the execution of the Defendants' contracts with the DPR and other governmental instrumentalities.

85.   Defendants' failure or refusal to pay Plaintiffs the prevailing wage and prevailing wage

supplements constitutes a material breach of Defendants' contracts with the DPR and other governmental instrumentalities.

86.     Defendants violated the provisions of New York Labor Law in that they failed to pay Plaintiffs the prevailing wages required under the relevant laws.

87.     Pursuant to the Defendants' contracts with the relevant government instrumentalities, and the relevant provisions of the New York Labor Law relating to "prevailing wages" to be paid to employees working on public works projects, Defendants were obligated to ensure that Defendants' employees were compensated no less than the prevailing wages and supplements required by those contracts and under the New York Labor Law for each hour worked.

88.     By failing to ensure that Defendants' employees received the prevailing wages and supplements required under their contracts with the relevant government instrumentalities, and the relevant provisions of New York Labor Law relating to "prevailing wages" to be paid to employees working on public works projects, Defendants breached its contract with the relevant government instrumentalities, a contract Defendants' employees were covered by and/or were beneficiaries of.

89.     Plaintiffs did not receive the monies they were due as beneficiaries of the contracts entered into by Defendants, on the one hand, and the DPR and other governmental instrumentalities, on the other, which provided for the payment of prevailing wages, and as a result, seeks a judgment for damages based upon an accounting of the amount of monies Plaintiffs and all others similarly situated were paid and the amount Plaintiffs should have been paid in prevailing wages, together with an award of interest, costs, disbursements, and attorneys'

-17-

fees, as allowed by the relevant statutes and such other relief as the Court deems proper.

## SECOND CLAIM FOR RELIEF
### (Illegal Kickbacks under New York Labor Law Section 198-b and against All Defendants)

90.   Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

91.   Defendants repeatedly requested, demanded and received parts of their employee' wages and supplements in an illegal kickback scheme in violation of Section 198-b of the New York Labor Law.

92.   Defendants shortchanged Plaintiffs and all others similarly situated, in a kickback scheme whereby Defendants would issue payroll checks at the required "prevailing wage" rate and require Plaintiffs and all others similarly situated to endorse the checks back to Defendants. Defendants would keep part of the wages and would give significantly lower wages in cash to Plaintiffs and all others similarly situated.

93.   Failure to comply with Defendants' directive to endorse pay checks back to Defendants would result in termination.

94.   In addition, the foregoing constitutes a violation of section 193 of the Labor Law, in that Defendants required Plaintiffs and all others similarly situated to make the aforesaid payments, which were not authorized in writing by the employees or for the benefit of the employees.

95.   Wherefore, Plaintiffs seek a judgment against Defendants for all wages which should have been paid, but were not paid, pursuant to the New York Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and

wages paid to, Plaintiffs, along with an award of liquidated damages, interest, attorneys' fees, and costs as provided under the New York Labor Law.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment Against All Defendants)

96.   Plaintiffs repeat and reallege each and every allegation previously made as if fully set forth herein.

97.   The Defendants have been unjustly enriched to the detriment of Plaintiffs and others similarly situated because they have received unlawful kickbacks from Plaintiffs and others similarly situated, and have made unauthorized deductions from Plaintiffs' and others similarly situated's wages, but have not compensated Plaintiffs and others similarly situated for said payments.

98.   As a result of Defendants' unjust enrichment, Plaintiffs and others similarly situated have been damaged in an amount to be determined at trial upon an accounting of the kickbacks paid by the named Plaintiffs and the other class members to Defendants and the unauthorized deductions made from their wages.

## FOURTH CLAIM FOR RELIEF
### (For Violations of Racketeer Influenced Corrupt Organizations Act against Individual Defendant)

99.   Plaintiffs repeat and reallege each and every allegation previously made as if set forth herein.

100.  Corporate Defendant is an enterprise as that term is defined in 18 U.S.C. § 1961(4) and § 1962 (c), which enterprise engages in, and the activities of which affect, interstate commerce.

110.  Individual Defendant is a "person" as that term is defined in 18 U.S.C. § 1961(3) and §1962

-19-

(c) and are employed, and otherwise associated with the Corporate Defendant.

111. Individual Defendant engaged in a pattern of racketeering activity as defined by 18 U.S.C. §1961 in that he maintained a pattern and/or practice of demanding "kick-backs" from Plaintiffs in exchange for continuing employment with Corporate Defendant, and the Individual Defendant would exploit the Plaintiffs' fear of economic harm in order to induce them to pay Individual Defendant.

112. Said acts on the part of the Individual Defendant constitute a pattern of extortion, which is chargeable under New York State law and punishable by imprisonment for more than one year and is indictable under 18 U.S.C. § 1951, otherwise known as the Hobbs Act.

113. The Individual Defendant's acts constitute a violation of 18 U.S.C. § 1962 (c) in that Individual Defendant, who was the owner of the Corporate Defendant, an enterprise with activities that affect interstate commerce, conducted or participated in the conduct of the Corporate Defendant's affairs through a pattern of racketeering activity.

114. The pattern of racketeering activity referred to above consisted of the extortion scheme which had the same specific intent, namely using unlawful influence to enrich the Individual Defendant and/or the Corporate Defendant at the expense of the Plaintiffs. The scheme involved more than two acts of extortion of Plaintiffs the Individual Defendant.

115. These predicate acts are related because they had the same or similar purposes and goals (the unlawful enrichment of the Individual Defendant and the Corporate Defendant) and the same or similar method of commission (the unlawful exertion of influence upon the Plaintiffs through direct and implied threats and the receipt of cash kickbacks from the employees).

-20-

116.    The Individual Defendant's acts constitute a violation of 18 U.S.C. § 1962 (d) in that the Individual Defendant conspired, and did, violate 18 U.S.C. § 1962 (c).

117.    As a result of the foregoing, Plaintiffs have been injured in their persons and their property in that they have paid the aforesaid "kick-backs" under duress and fear of economic harm and/or have sustained loss of earnings and mental anguish and emotional distress and are therefore entitled to treble damages, punitive damages, costs and expenses of the suit and reasonable attorney's fees.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against Defendants as follows:

    a.    Compensatory damages in an amount to be determined at trial, including back pay, front pay, and all benefits to which Plaintiffs were entitled;

    b.    Treble damages pursuant to RICO;

    c.    Liquidated damages pursuant to New York Labor Law ;

    d.    Pre-judgment interest; and

    e.    Plaintiffs' costs and reasonable attorney's fees.

Together with such other and further relief as the Court deems just.

Dated:   New York, New York
       February 23, 2017

ROBERT WISNIEWSKI P.C.

By: _____
    Robert Wisniewski
    Attorneys for Plaintiffs
    225 Broadway, Suite 1020
    New York, New York  10007
    (212) 267-2101

**EXHIBIT 1**

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES
PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS
CORPORATION LAW**

TO:

       Optimum Construction, Inc.
       23-73 48th Street
       Long Island City, NY 11103

       PLEASE TAKE NOTICE, that GRZEGORZ TUTKA and EDWARD POLTORAK, as
employees of the above corporation who intend to demand, pursuant to the provisions of Section
630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due
and owing to them as laborers, servants, and/or employees of the above corporation for services
performed by them for the above corporation within the six (6) years preceding the date of this
notice from the ten largest shareholders of the above corporation, and who have expressly
authorized the undersigned, as their attorney, to make this demand on his behalf,

       HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual
business hours, the minutes of the proceedings of the shareholders and record of shareholders of
the above corporation and to make extracts therefrom on or after five (5) days from receipt of this
notice.

     Dated: New York, New York
           February 5, 2015

                    ROBERT WISNIEWSKI P.C.

                    By: -------------/s/------------------
                    Robert Wisniewski (RW-5308)
                    Attorneys for Plaintiffs
                    225 Broadway, Suite 1020
                    New York, New York 10007
                    (212) 267-2101

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR
SERVICES RENDERED**

TO:     EFSTRATIOS BENARDIS

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business
Corporation Law of New York, you are hereby notified that GRZEGORZ TUTKA and
EDWARD POLTORAK, on behalf of themselves and on behalf of all others similarly situated,
intend to charge you and hold you personally liable as one of the ten largest shareholders of
OPTIMUM CONSTRUCTION, INC., for all debts, wages, and/or salaries due and owing to
them as laborers, servants and/or employees of the said corporation for services performed by
them for the said corporation within the six (6) years preceding the date of this notice and have
expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: New York, New York
       February 5, 2015

ROBERT WISNIEWSKI P.C.


By: --------------/s/---------------
Robert Wisniewski (RW-5308)
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, New York  10007
(212) 267-2101

**EXHIBIT 2**

**CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**

☐ **ORIGINAL**

------------------------------------------------------------------------X
In the matter of the Complaint

- against -

Optimum Construction, Inc., *Prime Contractor*,
23-73 48th Street
Long Island City, NY 11103,

      - and -

Efstratios Bernardis, *President/Shareholder*,
23-73 48th Street
Long Island City, NY 11103

For violation of New York State Labor Law § 220 *et seq.*
------------------------------------------------------------------------X

**Stipulation**
**of**
**Settlement**

**Labor Law File No. 20121108**

    **IT HEREBY IS STIPULATED AND AGREED** by and between Optimum Inc. ("Optimum"), Efstratios Benardis ("Benardis"), and the Office of the Comptroller of the City of New York ("Comptroller"), that:

1. Optimum and Benardis are aware that they are entitled to a hearing prior to the issuance of an Order by the Comptroller as to all of the issues set forth herein pursuant to section 220 (8) and subdivision (2-c) of section 220-b of the New York State Labor Law and hereby waive their right to said hearing and consent and agree that an Order be made and filed by the Comptroller with the following findings:

   a. The New York City Department of Parks and Recreation ("DPR") awarded Optimum Contract 2010142396/Q022-106M for the "Reconstruction of Weeping Beach Playground" and Contract 20101424275/CYNG-209M for the "Reconstruction of Comfort Stations and Facilities at Various Parks Citywide," (the "Contracts");

   b. Optimum failed to pay prevailing wages and supplements to its employees, classified as laborers, employed on the Contract, resulting in a total underpayment in the amount of $554,058.76 as set forth in the attached summary of underpayment;

   c. Optimum owes interest to said employees in the amount of $54,636.89;

   d. Optimum owes the further sum of $91,304.35 as a civil penalty, at fifteen percent of the total underpayment with interest;

   e. The failure of Optimum to pay prevailing wages and supplements was a willful violation and involved both the kickback of wages and supplements, and the falsification of payroll records, for the purposes of subdivision 3(b) of Labor Law Section 220-b;

1

    f.   Benardis is an officer of Optimum who knowingly participated in the willful failure to pay prevailing wages, the receipt of kickbacks, and the falsification of payroll records. Benardis is one of the five largest shareholders of Optimum who owns or controls at least ten per cent of the outstanding stock of Optimum, for the purposes of subdivisions 2(g) and 3(b) of Labor Law Section 220-b;

2.  This determination involves both the kickback of wages and supplements, and the falsification of payroll records, and, pursuant to subdivision 3(b) of Section 220(b), Optimum, its successor, or any substantially owned affiliated entity of Optimum, any of the partners of Optimum if Optimum is a partnership, any officer of Optimum who knowingly participated in this violation and any shareholder who owns or controls at least ten per cent of the outstanding stock of Optimum, including Benardis, are barred from submitting a bid on, or from being awarded, any public work contract, or subcontract, within the State, any municipal corporation or public body for a period of five years from the date of this determination.

3.  Optimum consents and agrees that the underpayment of wages, supplements and interest in the total amount of $700,000.00 shall be paid out of the funds currently withheld by the Comptroller pursuant to Labor Law § 220-b (2-b) on the Contracts. Optimum relinquishes all claims to $700,000.00 of the total amount withheld under the Comptroller's withholding on the Contracts and agrees that the Comptroller will apply the $700,000.00 to the underpayments of wages, supplements and interest owed to the employees and to the civil penalty owed to the City of New York, as set forth in the attached Summary of Underpayment. Optimum and Benardis agree to indemnify and hold the Comptroller and the City of New York harmless against any potential claims of trust beneficiaries pursuant to Lien Law Article 3-A for the full amount of the withheld funds of $700,000.00. Upon receipt of the payment in full, the Comptroller shall release all funds over and above the $700,000.00 withheld from Optimum on this matter on the Contracts pursuant to Section 220-b of the New York State Labor Law.

4.  If, for any reason, the withheld funds on the Contracts are unavailable to satisfy Optimum and Benardis' total liability to the Comptroller of $700,000.00, then Optimum and Benardis agree that they shall owe additional interest to each employee listed in the attached Summary of Underpayment at the rate of sixteen percent per annum on the full amount of the underpayment from June 12, 2013 until the date of payment.

5.  Upon receipt by the Comptroller of payment in full as set forth in Paragraph 3, Optimum and Benardis shall have no further liability to the Comptroller under Article 8 of the New York State Labor Law regarding work performed by the employees listed in the attached Summary of Underpayment pursuant to the Contracts.

**Optimum Construction, Inc.:**

By: _~~~ E Benardi~~~_            _E Benardi~~~_

Efstratios Benardis, President          Efstratios Benardis, Individually

Dated: _4-17-14_

| Optimum Construction, Inc | | | | | TOTAL UNDERPAYMENT | |
|---|---|---|---|---|---|---|
| File #20121108 | | | | | | |
| | | | | | | |
| | | | | | TOTAL UNDERPAYMENT | |
| NAME | | UNDERPAYMENT | | INTEREST | W/ INTEREST | |
| | | $ | 150,156.87 | $ | 13,876.91 | $ | 164,033.78 |
| | | $ | 96,476.10 | $ | 11,578.68 | $ | 108,054.78 |
| | | $ | 135,408.35 | $ | 13,006.64 | $ | 148,414.99 |
| | | $ | 128,522.03 | $ | 13,447.48 | $ | 141,969.51 |
| | | $ | 17,721.76 | $ | 2,201.08 | $ | 19,922.84 |
| | | $ | 25,773.65 | $ | 526.10 | $ | 26,299.75 |
| TOTAL | | $ | 554,058.76 | $ | 54,636.89 | $ | 608,695.65 |
| CIVL PENALTY | | | | | 15% | $ | 91,304.35 |
| TOTAL VIOLATION | | | | | | $ | 700,000.00 |